Filed 3/20/14  In re S.M. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re S.M. et al., Persons Coming Under the Juvenile Court Law. | B248815 (Los Angeles County Super. Ct. No. CK90670) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff, v. JESSICA G., Defendant and Appellant; GILBERT M., Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Timothy R. Saito, Judge.  Affirmed.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant Jessica G.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Respondent Gilbert M.

No appearance on behalf of Plaintiff.

# I.  INTRODUCTION

The mother, Jessica G., appeals from the juvenile court's March 29, 2013 exit order granting the parents joint legal custody.  The mother contends it was error to grant the father, Gilbert M., joint legal custody because of animosity between the parents.  The mother argues the father failed to rebut the presumption against joint legal custody under Family Code section 3044.  We affirm the custody order.

# II.  PROCEDURAL HISTORY

On October 12, 2011, the mother obtained a restraining order against the father in family law court.  The order was directed only at protecting the mother.  The order makes no reference to the children.

On November 8, 2011, the Los Angeles County Department of Children and Family Services (the department) filed a Welfare and Institutions Code[1] section 300 petition.  The petition was filed on behalf of the parents' daughter, S.M., age 6, Matthew M., age 4, and six-month-old Patrick M.  The petition alleges the parents had a history of engaging in physical altercations in the children's presence.  The petition also alleges the father inappropriately disciplined Matthew with a belt.  At the November 8, 2011 detention hearing, the children were released to the mother on the condition she remain in the domestic violence shelter.  The father was granted monitored two-hour visits three times a week.  On May 8, 2012, the juvenile court amended and sustained the petition under section 300, subdivisions (b) and (j).  The sustained count b-1 states:  "The [parents] have a history of engaging in physical altercations in the children's presence.  On prior occasions, the father grabbed, pushed and shoved the mother.  On prior occasions mother pushed and slapped the father.  On 9-19-12 [the parents] were involved in a domestic dispute which required police intervention, while the child Patrick was

---

[1] Future statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

present.  The mother failed to protect the children in that the mother allowed the father to reside in the children's home and to have unlimited access to the children.  Such physical altercations on the part of [the] mother and father, and the mother's failure to protect the children endangers the children's physical health and safety and places the children at risk of physical harm, damage, danger and failure to protect."  The sustained counts b-2 and j-1state:  "On prior occasions, the . . . father . . . inappropriately physically disciplined the child with belts.  The child's mother . . . failed to protect the child when she knew of the inappropriate physical discipline.  Such inappropriate physical discipline by the father and the mother's failure to protect the child endangers the child's physical health, safety, and well-being, creates a detrimental home environment and places the child and the child's siblings, [S.M. and Patrick] at risk of physical harm, damage, physical abuse and failure to protect."

At the June 12, 2012 disposition hearing, the juvenile court removed the children from the father's custody under section 361, subdivision (b).  The father was granted monitored visits with the paternal grandparents.  The paternal grandparents were to be assessed as potential monitors for the father's visits.  The father was ordered to participate in:  a 52-week domestic violence program; individual counseling to address adult and parental  responsibility and anger management; and developmentally appropriate parenting classes.  The mother was ordered to:  participate in a domestic violence support group for victims; undergo individual counseling to address adult and parental responsibility and all case issues; and take eight random or on demand consecutive drug tests.

At the December 11, 2012 section 364 review hearing, the matter was continued for a contested hearing on the exit order.  On January 30, 2013, the juvenile court granted the father unmonitored weekend visits with the children.  The matter did not settle in mediation on March 14, 2013 so a contested hearing was set for March 29, 2013.

On March 29, 2013, the juvenile court conducted a contested hearing on the exit order.  After hearing testimony from the father and the attorneys' argument, the juvenile court terminated jurisdiction with a custody order in place.  The mother was granted sole

*physical* custody.   But the parents were granted joint legal custody.  The juvenile court explained:  "[B]ased on the father's progress in this case as well as his being cooperative as well as the reports indicating that there doesn't seem to be any risk with regards to visitation at this point, even though the underlying case has shown that the mother and father have had issues in this case, it's yet to be seen whether or not based on the programs and their present compliance in this case that they cannot cooperate with regards to the legal issues.  So the court is going to grant leg . . . joint legal, sole custody."

III.  EVIDENCE

A.  Detention Report

On September 22, 2011, the department received a referral alleging the children were emotionally and physically abused by the father.  The caller reported the father had "kicked" the mother out of the home three days earlier after a domestic violence incident.  The caller alleged the father had grabbed the mother by the arm and pushed her into a wall.  Next, the father punched the mother on the shoulder and rammed her into the door.  The father then kicked the mother on the shin and pushed her out the door.  The father allegedly lied to unidentified police officers by telling them the mother was drunk.  The officers made the mother leave the home without the children.  The caller stated the children witnessed the domestic violence and had attempted to intervene in the past.  The caller also reported the father struck Matthew with his hand, causing hand prints and bruises on Matthew's body.  The caller also indicated the father had left bruises on S.M.'s arms.  Also, S.M. had belt marks on her leg.  The mother had obtained a restraining order from the father and filed a legal separation petition.

Children's social worker Sydney P. Tu interviewed the father on September 22, 2011.  The father denied any physical abuse of the children or domestic violence.  The father stated the mother took S.M. to school in the morning but would not return until 2 p.m.  On Monday, September 19, the mother came home stumbling and wanted to pick

4

up the baby, Patrick. The father did not permit the mother to do so because she was stumbling and in no condition to care for the child. The father claimed the mother had a history of leaving and not coming home. On three prior occasions, the mother was gone for a whole day and night without explanation and left the children in the father's care. The father's September 23, 2011 drug test was negative.

The mother stated she was stumbling because the father pushed her; not because she was drunk. The mother agreed to undergo drug testing but she did not report for a test because on the same day she was accepted into a confidential domestic violence shelter on September 23, 2011. The mother enrolled in parenting, drug and alcohol, problem solving, and domestic violence classes at the shelter. In addition, she was attending individual counseling. Matthew said he was happy at the shelter because he had friends. Matthew did not miss the father. This was because the father hit Matthew every day.


B. Jurisdiction And Disposition Report


The December 14, 2012 jurisdiction and disposition report was prepared by children's social worker Esmeralda Carmona. The report summarized interviews with the children and the parents. S.M. stated: "'My dad is the only one that needs help. My dad was hitting my mom. . . . They hit each other and my mom would say that one day we weren't going to live with him anymore. . . . They used bad words at each other. . . . My dad started the hitting during the fights.'" Matthew confirmed the father hit the mother.

The mother said the father accused her of cheating and was controlling. She said he hit her, pushed her against a wall, and choked her during their arguments. The father denied ever hitting the mother. He stated the mother was verbally and physically abusive.

The children said the father hit them. S.M. stated the father spanked her on the "butt" and sometimes would hit her on her arms or legs. She said the father hit Matthew

5

many times with a belt or his hand. Matthew stated, "'He hit me with his fists on the legs and arms, and it hurt but my dad liked me.'" The mother confirmed the father hit Matthew. The father stated: "'Yes. I have hit my son with a belt. I learned that now through the parenting [classes] that it is not appropriate, and that is clear to me, I understand. . . . It happened a few times; but the majority of the times I would put him on time outs, and even with those, I have learned in parenting [classes] that we have to talk to them about consequences and rewards, to give them an understanding of what they did wrong or even time outs won't work.'"

The report indicated the father was enrolled in: a substance abuse program; a domestic violence program; and parenting classes. The father's visit on December 2, 2011 went well. The children appeared comfortable in his presence.

## C. Interim Review Reports

The February 8, 2012 interim review report stated the father was enrolled at Twin Palms Recovery Center. The father was participating in parenting education, anger management, and domestic violence programs. The father reported he would be moving to Joshua Tree and would participate in programs offered by Lutheran Social Services. The father engaged and interacted well with the children during his visits.

The June 12, 2012 interim review report stated there were concerns about the father's visits. The children said the father told them "'everything is going to be over soon.'" The children did not want to live with the father because they were happy living with the mother.

The father complained the visits were not weekly as ordered by the juvenile court. The father stated he had completed a parenting education program at Twin Palms Recovery Center. In addition, the father had attended eight anger management classes through Lutheran Social Services. But he was not currently attending any more classes because he could not afford it. The father also said he was not enrolled in individual

6

counseling services because of financial reasons. The father stated he would not enroll in a domestic violence program until ordered to do so by the court.

## D. Status Review Report

The December 11, 2012 status review report was prepared by children's social worker David A. Rose. Mr. Rose related the mother had extended the restraining order against the father on October 29, 2012, for an additional five years. The children and mother lived together in a residential treatment facility. The children were sociable and healthy. S.M. and Matthew enjoyed visiting the father.

The father was participating in individual counseling and a domestic violence group for batterers. He had been consistently attending his weekly counseling sessions since August 8, 2012. The father had completed 30 of 52 domestic violence sessions since his March 14, 2012 enrollment. The father greatly enjoyed visiting his children. He was pleased to receive consistent visits, with his parents as monitors.

Mr. Rose recommended the juvenile court terminate jurisdiction and issue a family law order granting the mother sole physical and legal custody of the children. He also recommended the father be granted visits with the children every other weekend with the paternal grandparents as monitors. Mr. Rose wrote: "During this last period of supervision [, the father] has also appeared to be making progress due to his participation in individual counseling, a domestic violence group for batterers, and his completion of a parenting education program. [The father] has also been able to be consistently present for his weekend monitored visits with his children. No safety concerns have been reported by the children during the visits with their father. However, he did tell [S.M.] that he wanted her to live with him during a visit. It was explained to him that he should not discuss future placement. This was assessed to place an emotional detriment on the child, as it caused her to question her own stability and future living with her mother."

## E.  Father's Testimony

The father testified he completed his parenting and domestic violence classes.  In addition, he continued to attend counseling after extending the sessions.  The father visited the children every other weekend.  He picked up the children at a Los Angeles police station on Friday and dropped them off on Sunday.  The father lived in Joshua Tree, 200 miles from Los Angeles.  He lived alone except for when the children visited on the weekends.  He believed the children were better off with him because he was stable and owned his home, which was near an elementary school.

## IV.  DISCUSSION

Section 362.4 provides:  "When the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court . . . , the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child.  [¶]  Any order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court.  The order of the superior court shall be filed in the [existing family law proceeding], at the time the juvenile court terminates its jurisdiction over the minor, and shall become a part thereof.  [¶]  If no action is filed or pending relating to the custody of the minor in the superior court of any county, the juvenile court order may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides."  (*In re Chantal S.* (1996) 13 Cal.4th 196, 202-203.)  Our Supreme Court has explained:  "'When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court.'"  (*In re Chantal S., supra,* 13 Cal.4th at p. 203; *In re Roger S.* (1992) 4 Cal.4th 25, 30.)  Custody and visitation orders focus on the best interests of the children under all the circumstances and remain in effect until terminated or modified by the

family court. (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.) We review a custody order for an abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *In re Michael D.* (1996) 51 Cal.App.4th 1074, 1087.)

The mother argues the juvenile court erred in granting the father joint legal custody because it was not in the children's best interests. The mother contends there is animosity between the parents and she secured a restraining order against the father in the family law court. (As noted, the restraining order only related to the parents, not the children.) The mother argues Family Code section 3044 governs because the father is a domestic violence perpetrator. She asserts the father failed to rebut the presumption against joint legal custody under Family Code section 3044. But Family Law section 3044 is inapplicable. When a juvenile court makes a custody determination under section 362.4, it does so based on the best interests of the children without any preferences or presumptions. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712; see also *In re Chantal S., supra,* 13 Cal.4th at p. 201.) Furthermore, the juvenile court is not required to state its reasons when making a custody order under the Welfare and Institutions Code. (*In re Jennifer R., supra,* 14 Cal.App.4th at pp. 713-714; see *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1824.)

The juvenile court did not abuse its discretion by granting the father joint legal custody. The juvenile court granted joint legal custody because the father had made progress and the reports indicated there were no visitation risks. The father testified he had completed his parenting and domestic violence classes and was attending counseling. In addition, the juvenile court found there was no evidence the parents could not cooperate on legal issues relating to the children. Substantial evidence supports the joint legal custody order and no abuse of discretion occurred.

9

## V.  DISPOSITION

The custody order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


We concur:


KRIEGLER, J.


MINK, J.[*]


---

[*]     Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.